FILED
 2015 Dec-02  PM 03:52
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| M. DOUGLAS GHEE, as personal representative of BILLY KEITH FLEMING, deceased, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) Case No.: 1:15-CV-1430-VEH |
| REGIONAL MEDICAL CENTER BOARD; USABLE MUTUAL INSURANCE COMPANY d/b/a ARKANSAS BLUE CROSS AND BLUE SHIELD and d/ba/ BLUEADVANTAGE ADMINISTRATORS OF ARKANSAS; THE CRAWFORD CLINIC, LLC; GEORGE I CRAWFORD, JR.; J BRITNEY WILLIAMS; MICHAEL PROCTOR; SUMMER PHELPS; CHRISTOPHER SIMMONS; and DONALD ROSEN, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

Now pending before the court is a motion to remand. M. Douglas Ghee, personal representative of the departed Billy Fleming ("Fleming"), sued a number of defendants in Alabama state court and alleged that they caused Fleming's death.

Among the defendants was USAble, who removed the case to this court, alleging that the lone claim asserted against USAble was completely preempted by ERISA. Thereafter, Ghee moved for remand, and the court stayed the proceedings in this case until the existence of federal subject matter jurisdiction could be ascertained. Being fully apprised of the parties' contentions, the motion is **GRANTED**, and the case is **REMANDED** to the Circuit Court of Calhoun County, Alabama for the reasons set out hereafter.

## I. Factual and Procedural Background

Fleming died on July 16, 2013 from "septic shock due to peritonitis due to colonic perforation." (Doc. 1-1, ¶ 46). Fleming's colon burst because it was completely filled with impacted feces. He first complained of constipation, abdominal pain, and impaction on June 11, 2013, when he was admitted to the Northeast Alabama Regional Medical Center ("RMC"). The next day, a scan of his abdomen showed a "moderate amount of fecal material" within his sigmoid colon and rectum.

Two days later, Dr. Donald Rosen attempted to perform a colonoscopy on Fleming, but he was unable to perform the procedure due to fecal obstruction. Dr. Rosen therefore recommended that Fleming get a colectomy. On June 15, 2013, Dr. George Crawford was consulted, and he agreed that Fleming should have a

colectomy; Fleming was discharged on June 17. Crawford thereafter sought pre-approval for surgery from USAble.

Around July 5, 2013, USAble informed Dr. Crawford and/or his clinic, the Crawford Clinic, because USAble has determined that non-surgical treatment was more appropriate than surgery. Fleming tried to convince USAble to approve the surgery, to no avail. USAble did suggest, however, that Fleming try to convince the hospital to perform the surgery on an emergency basis.

So Fleming returned to the hospital on July 11, complaining again of abdominal pain. A CT of his abdomen showed a moderate of amount of retained stool throughout Fleming's colon, and he was discharged the same day after being seen by Dr. Britney Williams. Fleming returned again three days later complaining of severe abdominal pain and rectal bleeding and was discharged the same day.

Two days after that, Fleming was seen again and sent home. USAble consistently recommended that Fleming receive non-surgical treatment during this time. Fleming returned to the hospital at about 10:30 AM and died in the early morning on July 16, 2013. Ghee filed this lawsuit in August of 2015.

Clearly mindful of the risk of removal when suing an ERISA entity, Ghee attempted to delimit the claims asserted against USAble, which were wrongful

death, negligence, wantonness, and medical malpractice.[1] (Doc 1-1, ¶ 68). Because so much turns on the complaint, it is simpler to reproduce it:

> 68. [USAble] had or voluntarily assumed one or more of the following duties, jointly or in the alternative: a duty to act with reasonable care in the determining the quality of health care Billy would receive; a duty not to provide to Billy a quality of health care so low that it knew that Billy was likely to be injured or killed; and a duty to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.
> 69. [USAble] breached those duties, jointly or in the alternative, as follows:
>     a. Negligently providing for a lower quality of healthcare for Billy;
>     b. Wantonly providing for a lower quality of healthcare for Billy;
>     c. Breaching the standard by (i) failing to provide a higher quality of healthcare to Billy (necessary, life saving surgery) and (ii) failing to communicate adequately with Billy's healthcare providers his need for surgery.
> 70. Those breaches combined with the actions of other defendants as a legal cause of death for Billy Keith Fleming, in that without the breaches, Billy would have more likely than not survived.
> 71. Per *Dukes v. US Healthcare*, 57 F.3d 350 (3d Cir.

---

[1] While the complaint lists these causes of action together, in a shotgun fashion, it appears based on Ghee's briefing that the only claim asserted is a wrongful death claim, and paragraph 71 of the complaint supports this conclusion. "Ghee does not seek any benefits or even compensatory damages (state law does not allow for such damages) but instead *only the wrongful death damages allowed by Alabama state law*."

> 1995), Ghee makes no complaint that benefits were denied to Billy; indeed, [USAble] provided multiple, numerous and repeated benefits (a high quantity) to Billy in an attempt to manage his bowel obstruction without surgery. Ghee's only complaint against [USAble], as detailed above, involves the *quality* of the benefit received, specifically that it was of such a low quality (did not include necessary surgery) that it caused Billy's death. Further, considering Billy is deceased, he necessarily cannot attempt to force [USAble] to provide any benefits to him. He is dead. Because of this indisputable reality, Ghee does not seek any benefits or even compensatory damages (state law does not allow for such damages) but instead only the wrongful death, punitive damages allowed by Alabama state law.

USAble filed a notice of removal pursuant to 28 U.S.C. §§ 1441 & 1446 and its answer on August 20, 2015. Seven days later, it filed a Motion to Dismiss. On September 9, 2015, Ghee moved to stay all proceedings in the lawsuit until the resolution of his forthcoming motion to remand. The court granted the stay on September 10, and Ghee filed his motion to remand, pursuant to 28 U.S.C. § 1447, on September 21. The parties have filed their briefs, and the motion to remand is now under submission. Because the court determines that it lacks subject matter jurisdiction, the motion to remand is **GRANTED.**

## II. Discussion

### A. The Well-Pleaded Complaint and Complete Preemption

Normally, a party seeking to avail himself of the sharply circumscribed federal forum must show that federal jurisdiction lies on the face of the complaint, so merely raising a federal defense in an answer will not do. *See Louisville & N.R. Co. v. Mottley*, 211 U.S. 149, 152–53 (1908). This is often called the well-pleaded complaint rule. Federal preemption is ordinarily a defense—meaning it does not appear on the face of the complaint—so it usually cannot serve as the basis for federal jurisdiction. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 18–19 (1983). But the Supreme Court has held that some laws are completely preempted,[2] reasoning that the scheme of Congressional regulation in a particular field of law is so pervasive that non-federal claims in that area of substantive law simply do not exist. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 7 (2003). Thus, a defendant in a state action that is completely preempted need not clear the hurdle of the well-pleaded complaint rule to get into federal court.

---

[2] While the antecedent factual questions (conflicts between state and federal law) are the same in defensive preemption and complete preemption, referring to them both as preemption is somewhat misleading. "[C]onfusion remains because the complete preemption doctrine is not a preemption doctrine but rather a federal jurisdiction doctrine." *Speciale v. Seybold*, 147 F.2d 612, 615 (7th Cir. 1998).

ERISA's private enforcement mechanism, section 502(a), codified at 29 U.S.C. § 1132(a), completely preempts state law claims. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987). This is not to say that all state law claims against ERISA entities are completely preempted; the party asserting federal subject-matter jurisdiction must demonstrate that the claims satisfy the test set forth in *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004).

Under the *Davila* test, a claim is completely preempted by ERISA if, and only if, 1) "an individual, at some point in time, could have brought his claim under [29 U.S.C. § 1132(a)(1)(B)]," and 2) "there is no other independent legal duty implicated by defendant's actions." *Davila*, 542 U.S. 210, as construed by *Connecticut State Dental Ass'n v. Anthem Health Plans*, 591 F.3d 1337, 1345 (11th Cir. 2009).[3] The first prong is further subdivided into two parts: "(1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Connecticut Dental*, 591 F.3d at 1350 (citing *Davila*, 542 U.S. at 210).

But the *Davila* is in the details. More precisely, the complete preemption inquiry is very fact intensive. *See Davila*, 542 U.S. at 210 (In step 1, "we must

---

[3] The quotes come from *Davila*, but establishing it as a two-prong test using those quotes, rather than the other, narrower, formulation in *Davila*, was the work of the Eleventh Circuit.

examine respondents' complaints, the statute on which their claims are based, and the various plan documents."). There are two important takeaways about *Davila*: First, if any element of the test is not satisfied, subject matter jurisdiction is not established. *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1304 (11th Cir. 2010). Second, despite the clarity of the legal standard in *Davila*, it does not provide much guidance as to what factual content will satisfy the test; lower courts must therefore be guided by past determinations of what kinds of statutes are preempted.

### B. Alabama's Wrongful Death Statute

Alabama's wrongful death statute allows a "personal representative" to:

> commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama [...] for the wrongful act, omission, or negligence of any person, persons, or corporation, his or her or their servants or agents, whereby the death of the testator or intestate was caused, provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it had not caused death.

ALA. CODE § 6-5-410.

Unique among the fifty states, Alabama's wrongful death statute allows for only the recovery of punitive damages. *Black Belt Wood Co., Inc. v. Sessions*, 514 So.2d 1249, 1262 (Ala. 1986). Compensatory damages, including "[p]ecuniary

loss, such as medical expenses attending the injury, and mental suffering are not to be considered as elements of damage." *Board of Trustees of University of Ala. v. Harrell*, 188 So.2d 555, 556–57 (Ala. App. 1965). The rule "rests upon the divine concept that all human life is precious," *Atkins v. Lee*, 603 So.2d 937, 942 (Ala. 1992), and its "paramount purpose" is the "preservation of human life." *Sessions*, 514 So.2d at 1258. Thus, the wrongful death action is designed "solely to protect human life by deterring tortious acts that result in death and to impose civil punishment on those who take human life." *King v. National Spa and Pool Institute, Inc.*, 607 So. 2d 1241, 1246 (Ala. 1992).

While the cause of action is designed to benefit the next of kin, *Brown v. Morgan County, Ala.*, 518 F. Supp. 661 (N.D. Ala. 1981) (citing *Bruce v. Collier*, 127 So. 553, (Ala. 1930) *overruled on other grounds*, *King*, 707 So. 2d at 1241, "the right of action which the statute gives is a new right, not derivative nor the right of succession to the person slain." *Breed v. Atlanta, B. & C.R.R.*, 4 So.2d 315, 317 (Ala. 1941). "[T]he person bringing the cause of action does so as an agent of legislative appointment for effecting the declared public policy of preventing homicides." *Id.* Additionally, the damages recovered are not to be used to pay the liabilities of the decedent but are to distributed in accordance with Alabama's intestacy statute. *See* ALA. CODE § 6-5-410(c).

To sum up, the Alabama wrongful death action vests a personal representative with a new right that never existed in the decedent to recover damages that do not compensate for the injury but vindicate the Alabama policy of deterring death by awarding punitive damages to the next of kin.

### C. Ghee's Claims Could Not have Been Brought Under ERISA

Ghee's claim is unusual, to say the least. The gist of it is that USAble interjected itself as a healthcare provider for Fleming and then negligently provided a suboptimal standard of care resulting in Fleming's death. Ghee has now brought this wrongful death action. The court concludes that this claim could not have been brought under ERISA's private enforcement mechanism, so it lacks subject-matter jurisdiction over the claim. This conclusion also moots the issues of whether Ghee had standing under ERISA and whether a truly independent right is implicated, so they will not be addressed here.

An ERISA claim may be brought "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Ghee's first argument in support of remand is that, because this is a wrongful death action, this does not fall within 29 U.S.C. § 1132(a)(1)(B); i.e., it is not an action to recover benefits, enforce rights, or clarify rights. But the Supreme Court

has made unmistakably clear that simply denominating a cause of action as "not ERISA" is insufficient to avoid complete preemption. *Davila*, 542 U.S. at 214. This argument fails.

Second, Ghee argues that the peculiar nature of the Alabama wrongful death action means that it cannot be filed under ERISA. The argument runs like this: The action only allows for punitive damages, not compensatory damages of any kind, not even medical expenses, so it is inherently *not* an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

This is an appealing position as a matter of logic and language, and the court would add a few observations to Ghee's argument. First, section 6-5-410 is a civil punishment imposed as a deterrent against tortious acts resulting in death. It is difficult to imagine any scenario in which an ERISA insured would be entitled to recover a deterrent against death as a plan benefit. Second, the wrongful death claim is a new right,[4] benefitting the next of kin apart from the testator's estate,

---

[4] Under Alabama law, personal injury or medical malpractice actions are distinct from wrongful death, and they too survive the death of the tortiously injured. *King*, 607 So. 2d at 1246. The court expresses no opinion about whether personal injury or medical malpractice claims in this case would be completely preempted.

that only comes into existence upon the decedent's death. It is nonsensical to contemplate an action to recover a plan benefit that cannot exist until the insured's death,[5] and may not be used to satisfy the liabilities of the insured. Third, the personal representative acts as "an agent of legislative appointment" advancing an Alabama policy through an Alabama right created under Alabama law vested in him. It is not an ERISA plan but the state of Alabama that creates the right to recovery here.

USAble's counter is that *Davila* precludes escape from complete preemption by changing the remedy sought. It is true that seeking a remedy unavailable under ERISA does not necessarily inoculate a complaint against complete preemption, *see Davila*, 542 U.S. at 215, but it is venturesome to suggest that the remedy sought could *never* influence the preemption analysis. *See id.* ("Nor can the mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA§ 502(a) put the cause of action outside the scope of the ERISA civil enforcement mechanism."). More important, however, is the fact that this argument misunderstands section 6-5-410; it creates a

---

[5] To the extent that such a plan would be covered by ERISA, a death-benefit plan is distinguishable from the case at bar because the individual who initiated the coverage created the obligation by offering consideration during his or her life. Here, the right of recovery is triggered only by the tortious killing of the decedent—a service for which the decedent presumably did not contract.

*different right* which is consequentially vindicated by means of a different remedy.

Defendant also complains that Ghee has cited no authority for the proposition that when compensatory damages for the denial of benefits may not be recovered, the suit avoids complete preemption. Yet, USAble cites no authority for the proposition that a state law vesting a new right in a third party, not the insured, can be brought under ERISA. Accordingly, there is no reason to reject the fundamental appeal of Ghee's argument, especially because the issue of whether ERISA preempts the unique Alabama wrongful death statute is one of first impression in this circuit.

While logic and language suggest that the Alabama wrongful death act falls outside of the scope of complete preemption, it is unsatisfying to rely only on deduction—the aphorism that "law is the perfection of reason," *In re Konowitz*, 905 F.2d 55, 59 (4th Cir. 1990), notwithstanding. In keeping with *Davila's* direction to consider the plan,[6] the complaint, and the statute, it is worth considering whether any other cases have featured similar complaints.

---

[6] USAble has not provided information about the plan in its remand-related briefing, but it attached information about the plan to its motion to dismiss, which it claims to have incorporated by reference—in a footnote—into its remand briefing. Upon examination of the motion to dismiss, the only reference to the plan vis-à-vis complete preemption is to show that it is an ERISA covered plan. USAble has pointed to nothing in the plan vesting rights in Ghee prior to Fleming's death. Since it is USAble's burden to prove subject matter-jurisdiction, *see Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010), the consequences of that omission are theirs to bear.

Beginning with *Davila* itself, the plaintiffs there sued for violation of a Texas law because defendant Aetna failed to pay for a certain medication and cover more than a single day's stay in a hospital. 542 U.S. at 211. The Court reasoned that because Aetna had refused to provide benefits guaranteed under ERISA, the beneficiaries could have paid for the denied benefits themselves, and then brought an action under the private enforcement mechanism to recover the cost of the denied benefits. Ghee, in contrast, is vindicating an Alabama policy and suing on a right that was not available to Fleming. *Davila* is inapposite.

So too with the other cases USAble cites supporting its position. *Connecticut State Dental* was an action by dentists to recover on contracts in which the insurance company allegedly improperly denied the dentists' claims for payment for treatment. 591 F.3d at 1350–51. The facts of *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296 (11th Cir. 2010) were similar. The right to recover in these cases existed as a consequence of the ERISA plans; the right to recover here <u>came into existence after the beneficiary's death</u> and was therefore not available to the beneficiary, as a part of his plan or otherwise.

The three wrongful death cases, *Garrison v. Ne. Georgia Med. Ctr., Inc.*, 66 F. Supp. 2d 1336, 1343 (N.D. Ga. 1999) *aff'd sub nom. Garrison v. Ne. Georgia Med. Ctr.*, 211 F.3d 130 (11th Cir. 2000); *Grady v. Bunzl Packaging Supply Co.,*

874 F. Supp. 387, 393 (N.D.Ga. 1994); and *Dearmas v. Av-Med, Inc.*, 814 F. Supp. 1103, 1107 (S.D. Fla. 1983) are pre-*Davila* and rely upon the old distinction between quality and quantity of care that *Davila* rejected, and that USAble objected to in its notice of removal. None of these cases present the issue in this case—a right of recovery that <u>only</u> comes into existence after the death of the beneficiary, a recovery that <u>cannot</u> be used to pay the debts of the insured's estate, and a remedy that <u>precludes</u> recovery for the value of the ERISA benefits.

Finally, the Eleventh Circuit's treatment of medical malpractice claims post-*Davila* is worth considering, *See Land v. CIGNA Healthcare of Florida*, 381 F.3d 1274 (11th Cir. 2004). The case was vacated and remanded for further consideration in light of *Davila*, and the original complaint was a medical malpractice action against a health maintenance organization. *Id.* at 1275–76. The plaintiff there was bitten by his cat, given antibiotics, and his physician ordered that he stay overnight in the hospital and receive aggressive treatment. *Id.* at 1275. An approval nurse from his HMO approved the use of antibiotics but denied the benefit of staying in the hospital. *Id.* He later got much worse and ultimately had to have a finger amputated. *Id.* Offering little analysis, the Eleventh Circuit concluded, in light of *Davila*, that the medical malpractice claim was completely preempted. *Id.* at 1276. Of note, however, the Eleventh Circuit did say that the

claim there was to remedy the denial of benefits, making Ghee's claim distinguishable from Land's; Ghee does <u>not</u> seek to remedy the denial of benefits but to vindicate the public interest in deterring tortious death.

### III. Conclusion

Because the Alabama wrongful death statute does not allow recovery for the value of benefits denied, only punishment for causing a death, the suit could not be brought under the ERISA private enforcement mechanism. This conclusion means the court need not determine whether the other prongs of *Davila* are satisfied; the inability to bring the complaint under ERISA precludes complete preemption, so the court lacks subject matter jurisdiction. The case will be **REMANDED** to the Circuit Court of Calhoun County, Alabama by separate order.

**DONE** and **ORDERED** this 2nd day of December, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge